## Howard v. Barton et al.

(Decided June 10, 1932.)

N. J. WELLER, for appellant.

M. G. COLSON, for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The record herein shows these to be the facts:

Many years ago, H. C. Pursifull was the owner of a considerable acreage of land in Bell county, Ky., on which was located the spring in controversy in this case. At that time, there extended in an eastwardly and westwardly direction a county road from Pineville to Harlan which ran through the Pursifull land, north of and some 20 feet or more above the spring.

It is further shown that H. C. Pursifull, after acquiring this land, cleaned out a basin two or three feet southeast of a beech tree that stood near the spring, into which water from the spring flowed as it ran out of a rock or slate cliff some two or three feet north of the basin. This basin had a capacity of some two or three buckets of water, which neighbors and travelers along said county road used according to their needs. This undisputed and free right to so use the water of the spring was given and recognized by Pursifull, who, according to the testimony, announced that "anybody could get the water that wanted it."

This land of Pursifull's was by mesne conveyances or mesne grants thereof conveyed to T. J. Asher. In 1904, Asher conveyed 119 acres of this land, on which was located the spring in question, to R. L. Johnson. The said Johnson deeded off parcels of his 119-acre tract to certain of his sons and sons-in-law, but retained about 60 acres on which the spring was located. This 60 acres he conveyed to M. D. Hoskins March 15, 1919, by whom the same was conveyed to Joe D. Smith and Berry O. Howard in December, 1930.

Smith and Howard had a survey and plat made of the boundary of this 60 acres and divided it into streets, lots, and alleys. This division of the land was designated on the plat as East Pineville, which was duly put to record in the office of the Bell county court.

It appears that during the ownership of this land by R. L. Johnson the families of his sons and sons-in-law, as well as the neighbors and others of the public so desiring, continued to use the water of this spring as a public spring, without question or hindrance made to such use by Johnson.

It further appears that some thirty years ago the aforementioned county road, which then extended over the hill a short distance north of this spring, was changed in its location and moved therefrom some 260 or 270 feet south and lower upon the Pursifull land. After this change, the spring being less accessible to the public, its public use abated but was not withdrawn. This county road some eleven years ago was made an asphalt and concrete highway from Pineville to Harlan.

Along this improved Pineville to Harlan highway, and on the north side thereof, Joe D. Smith and Berry Howard, after platting the said 60 acres and subdividing it into lots and streets, conveyed to the appellee, R. C. Barton four of these 50-foot lots, described as Nos. 7, 8, 9, and 10, in block 7, fronting south on the said Pineville-Harlan road 200 feet, and extending north 235 feet to a new street known as Smith's Drive, 25 feet in width and extending east and west.

There was conveyed also to A. M. Howard the adjoining lots 11 and 12 in block 7, fronting on the said highway and extending north the same distance to said Smith's Drive.

It further appears that just across the said Smith's Drive, on the north side thereof and directly opposite appellee Barton's said lot 10 in block 7, is lot 10 of block 8 of said subdivision, on or near the south portion or line of which the spring in question is located. The location of the spring is a strongly controverted question; the appellant Howard contending that it is located on his lot, and the appellee Barton contending that it is in Smith's Drive, a public road.

It appears, however, an uncontroverted fact that the water issuing from this spring, whether from beneath the cliff near the beech tree or arising from other sources nearby, did flow in a well-defined stream southwestwardly across the lots of both appellee and appellant to the said Pineville-Harlan highway and through a culvert thereunder on southwardly to the Cumberland river nearby.

It further appears that the appellee Barton, soon after acquiring his lots, built a wall or dam about on the north line of Smith's Drive, and just above it enlarged the old Pursifull spring basin so as to extend it down to his wall, and piped the water from this basin or reservoir southwardly down the hill to his residence near the Harlan-Pineville road.

Also it appears that, by some arrangement had between Barton and Howard, Howard tapped Barton's water pipe and thus together used in their residences this water piped down from the spring basin above until some time in the year 1930. Barton's water pipe was extended beyond his residence across the Harlan highway to the home of E. H. Turpin, situated on the south side of this highway, and the hydrants maintained by these parties were used by the neighbors for supplying their own water needs. Others of the public also generally used the said spring reservoir for satisfying their water needs, carrying water therefrom to their homes in buckets.

This subdivision of East Pineville had no other public water supply, and the water needs of its citizens were met either by the water from this spring reservoir or a few private wells.

Along about 1923, the appellant, W. M. Howard, acquired title to lot 10, block 8, upon which he claims

the spring in question is located, but, notwithstanding this fact, he continued to make joint use of the water of the spring with appellees and other citizens of East Pineville until some time in 1930, when he claims his use of this spring water, had under his arrangement, with appellee, was interrupted through appellee's cutting off his water supply through his said water pipe.

Some while after appellee Barton built the first water retaining wall at the spring, he tore down this wall and erected in the spring of 1930 on the north side of Smith's Drive, some 8 feet below its north line, a new cement wall some 13 feet long, which formed a larger basin for catching and holding this spring water, thus securing a better supply therefrom for those who used the water of this spring.

When appellee did this, appellant Howard built a wall across the south end of his spring lot, north of the new reservoir built by Barton, thus intercepting its supply from the spring, and proceeded to lay drain and lead pipes in his higher reservoir for piping water down the hill to his residence.

When this was done, suit was instituted by Barton against Howard, alleging that the said spring was on Smith's Drive and was a public spring and that Howard was interfering with Barton and the public in the use and enjoyment of the water caught in his new reservoir from the public spring and sought an injunction against Howard, which was temporarily granted by the court.

Howard filed answer and counterclaim, making it a cross-petition against the appellee, E. H. Turpin, wherein he denied the allegations of the petition and affirmatively pleaded his ownership of lot 10, block 8, whereon he alleged the spring to be located and sought to enjoin Barton and Turpin from interfering with him in the construction of his reservoir and the use of his spring water and to remove the obstruction made by Barton in placing his reservoir walls in Smith's Drive, a public street, as interfering with him in the use of said street and in his approach to his own lot and spring in question thereon.

Appropriate pleadings followed making up the issues, proof was taken, and the case submitted, when judgment was rendered by the court for plaintiff.

The court in a written opinion adjudged and declared that "substantially" all of the spring and all of the reservoir was situated upon the public street known as Smith's Drive, south of the south line of lot 10, block 8, and further that the spring had been used by the people of the vicinity and the public generally for more than forty years as a public spring, without objection on the part of the owners of the land upon which the spring was located, and adjudged that such use of the spring created an easement to use the water in favor of the plaintiff and all others owning property or living in the vicinity of the spring.

From this judgment, Howard, defendant below, has appealed, and seeks by brief of his counsel to have a determination here made of the questions as to whether this spring or its waters in controversy is located upon his lot, and as such something entirely his own, or whether it is located upon the adjoining street bearing the name of Smith's Drive; also whether the spring in question is a private or public spring, and whether he has a right to build retaining walls or a reservoir on his own lot in which to gather and control the waters of this spring, if found located on his own lot, and the further question of whether the appellee can be compelled to remove the reservoir constructed by him and others for catching and impounding the waters of this spring in Smith's Drive, an obstruction wrongfully placed upon said public way.

From our consideration of the matters presented upon this appeal, we conclude that the main or vital inquiry is that which asks our determination of what is the nature and character of this spring, whether it be a private spring and as such under the control of appellant or a public spring, in which his use of its waters is a right held and to be enjoyed by him in common with the others of the community or a public possessed of like rights therein.

We deem a determination of this question is conclusive of and a sufficient answer to the other questions propounded herein by appellant.

The testimony of many witnesses given in this case, many of them long familiar with the spring in controversy and its history, tends to show that forty or fifty years ago it was a well-known spring located upon a large farm owned by Henry Pursifull. A county road

passed near by the spring through Pursifull's farm, which was then the main highway and much traveled.

Pursifull, as the then owner of the land and the spring located thereon, constructed a small basin close by it, in which to gather the water of the relatively small stream issuing from this spring near the base of the cliff in order to provide a better and more convenient use of its waters and as better affording a means by which it could be taken therefrom by cups or buckets, whether by himself, his neighbors or the traveling public over and along the nearby highway. When he had made this small reservoir in which to collect the spring's small flowing stream, he announced and let it be generally understood it was open to any and everybody to come and get its water who wanted it.

The public and neighbors did thereafter make such given use of the spring, without interruption or objection on the part of Pursifull or his successors in title to said lands on which the spring was located, until the one very recent interruption was made in the public's use thereof by appellant Howard in 1930 when, after building his own private reservoir for impounding the water of the spring, he sought to exclude from the use of its water the appellee and perhaps others, claiming so far as the evidence shows for the first time that it was his private spring because located upon his privately owned lot.

We are of the opinion that this claim of private ownership and control of this spring or spring stream comes now too late when made by appellant.

The learned chancellor below, upon his hearing of this cause, found from the testimony of many witnesses concerning this spring and the public's use thereof that an easement therein in favor of the plaintiff and all other persons owning property or living in the neighborhood, as well as the public generally, had been acquired through long use by them of the water of said spring as a public spring originating with Pursifull and without objection on the part of the later successive owners of the land where the spring was located.

We are of the opinion that the record affords ample evidence showing such long and continued use by the public of this spring as one of right as fully supports and warrants this finding and holding of the

chancellor, and that the evidence as to the original giving of the spring by Pursifull to the public and the public's long-continued use and enjoyment thereunder of the spring tends to show and sufficiently establishes the same as a dedication of it to the public, and that same has since such time been so used and enjoyed by it. Any act upon the part of a dedicator from which an intention to dedicate may be gathered is sufficient to constitute a common-law dedication, and such common-law dedication may be shown and established by parol. 8 R. C. L. 891; Thompson v. McPherson (Ky.) 124 S. W. 272, 273. We are thus of the opinion that the language and conduct of Henry Pursifull, when he constructed the small reservoir by his spring and announced that its use was then open to the public and that any one might get water therefrom, constituted a dedication of the spring to the public or a public easement of use in the spring.

In Thompson v. McPherson, supra, where in a suit between them Thompson asserted a right to use water from a well on the ground both of having an easement by adverse user and of dedication of the well to public use by a former owner, the court in discussing the latter ground of defense said:

"We do not think there is the slightest doubt that Ezekiel Neal, who owned the land at the time, and who dug the well, dedicated it to public use, and that the public continued using it from the time of the dedication to the present, under a claim of right. * * * Two of the persons who owned the land between the time of the dedication and the institution of this action testified that, while they owned it, they knew of and recognized the right of the public to the free use of the water"—and the court therein decided that there had been a parol dedication of the well to the public who had since continued its use under claim of right thereto, and thus announced the applicable rule of law as to such cases: "The rule is well established that no particular words are necessary to dedicate a well, a highway, or other easement to public use, and that the dedication may be by parol. This being true, the question is one wholly of fact, and we have no hesitancy in saying that we think the chancellor was right in his conclusion that the use of the well is public property."

94

From the evidence given in the record of a dedication of this spring to the public and its continued use of the spring under claim of right, we also in the instant case have no hesitancy in saying that we think the chancellor was right in his conclusion that the use of the spring in question is public property or that same is a public spring.

From our conclusion that the spring in controversy is a public spring, it must follow that the location of the spring becomes immaterial as affecting the rights of appellant and appellee therein, as appellant would thus have no exclusive rights in the spring or control of its waters through his ownership of the lot upon which it is located, should it be so located, nor further would he have, by reason of the ownership of the lot on which he claims is the spring, valid right of objection to the erection of the reservoir in question by appellee and others of the public co-operating with him in its construction upon Smith's Drive for impounding the waters of the spring for their better and more convenient public use, including appellant's right to a like and equal reasonable use thereof as one of the public holding such easement of use in the spring. The method and extent of the use of the spring is not upon this appeal presented, but only that as to the uninterrupted right of use of the spring as one dedicated to the public, and no other or further question is herein considered as presented or decided.

Thus, perceiving no error committed by the finding of the learned chancellor in adjudging the spring in question a public spring, his decree so adjudging must be and is affirmed.